**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George I. BENNY, Defendant-Appellant.**

**No. 84–1074.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1985.

Decided April 15, 1986.

Sanfrod Svetcov, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Jerrold M. Ladar, San Francisco, Cal., for defendant-appellant.

Before DUNIWAY and TANG, Circuit Judges, and HUPP,* District Judge.

* Honorable Harry L. Hupp, United States District Judge for the Central District of California, sitting by designation.

TANG, Circuit Judge:

Appellant George Benny was convicted after a jury trial of twenty-one counts of mail fraud under 18 U.S.C. § 1341–42 and one count of racketeering under RICO provision 18 U.S.C. § 1962(c). The indictment arose out of two related and one unrelated schemes to defraud institutional lenders in the financing of a northern California apartment building and a planned community to be built on a Nevada ranch. Benny appeals his convictions on a number of grounds. First, he alleges that the RICO conviction must be reversed because the "defendant" and the "enterprise" cannot be the same individual. Second, Benny alleges the mail fraud conviction should be reversed because the district court erred in its jury instructions regarding intent to defraud and because of errors based on his non-assumption of fiduciary obligations, government interception of communications with his attorney, selective prosecution, the government's use of perjured testimony, the grand jury's consideration of perjured testimony, refusal of the district court to admit testimony, the mailing requirement of the mail fraud count, and the disparity of sentencing. We affirm.

**FACTS**

The record indicates that Benny operated a sole proprietorship which engaged, inter alia, in the acquisition and management of real estate. In the course of his real estate business, Benny either employed or associated with four other defendants: Ariel Basse, James S. Urbanski, James A. Fagerhaugh and Robert M. Lawrence. Benny's conviction rested on two related and one unrelated series of transactions. These transactions are recounted in *United States v. Benny*, 559 F.Supp. 264, 265–66 (N.D.Calif.1983), and will be briefly summarized.

WELLS FARGO LOAN

In 1977, Benny devised a scheme to defraud Wells Fargo Bank in connection with the purchase of Diamond Heights Village ("DHV"). Benny represented to Wells Fargo that he was purchasing DHV for $14.5 million and that he had placed a $2 million down payment in escrow. Instead, the purchase price of DHV was actually only $12.5 million and the $2 million check was written against an account balance of $5,000. Neither Benny nor the escrow company notified Wells Fargo when the check was dishonored. On the basis of Benny's representations, Wells Fargo loaned Benny $13.5 million to buy DHV in November of 1977.

DIAMOND HEIGHTS VILLAGE
STRAW BUYER OPERATION

In late 1979, defendants Benny, Basse, Fagerhaugh, Urbanski and Lawrence implemented a second series of transactions. They procured purported borrowers to submit loan applications to various lenders for the purported purchase of individual condominiums at DHV. Benny agreed to pay the downpayments into escrow and to make the monthly payments on the loans. Benny received the loan proceeds but kept the units.

The "straw sales" continued into 1981. During the course of these "sales", the defendants falsified financial information with respect to many of the purported borrowers to cause them to appear financially qualified for the loans, e.g., employment verifications and other documents reflecting income and assets. Many purported borrowers had multiple loans on DHV units which were concealed from the lenders. In addition, the defendants forged the names of purported borrowers on various documents.

Finally, the defendants inflated the purchase prices of the DHV units in order to obtain loans larger than otherwise would have been available. Since the "straw sales" did not involve actual arm's length negotiations, Benny himself set the sales prices at levels which far exceeded the actual market value of the units. Believing these sales to be the result of arm's length transactions, appraisers for the lenders and the mortgage brokers relied upon them to determine the value of the units on which new loans were being

sought; these resulted in inflated appraisals. Consequently, banks and mortgage brokers made loans on the units in excess of their actual market value.

### CASABLANCA STRAW BUYER OPERATION

In December of 1980, Benny acquired a 160 unit condominium complex in Las Vegas known as the Casablanca condominium project. Shortly thereafter, Benny sought financing to enable him to purchase the 2300-acre Double Diamond Ranch near Reno, Nevada, on which he intended to build a planned community. Toward financing the purchase of Double Diamond, Benny borrowed approximately $13 million from Nevada National Bank and other lenders. These loans were to be repaid through the sales of Casablanca condominium units.

Instead of making sales, the defendants procured "straw" borrowers to apply for loans. Again, Benny agreed to make the downpayments and the monthly repayments of the loans. The purported borrowers executed quitclaim deeds to Benny. Thus, the Casablanca borrowers' loans were used by Benny to repay the short-term loan from Nevada National. As in the Diamond Heights Straw Buyer Operation, the defendants falsified the financial information pertaining to the purported borrowers and forged numerous documents involved in the Casablanca loan applications. Defendants Lawrence and Fagerhaugh were not named in this transaction.

Each of Benny's co-defendants pleaded guilty to lesser charges in exchange for their testimony against Benny at trial. Benny was sentenced to thirty years in prison.

### DISCUSSION

#### I. RICO Count

#### STANDARD OF REVIEW

■ This court reviews the sufficiency of an indictment *de novo* as an issue of law. *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983).

### ANALYSIS

■ Benny was indicted (Count Thirty-two) and convicted for racketeering under 18 U.S.C. § 1962(c) which states that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Such an indictment is proper when it preserves the enterprise's character as a separate element of the RICO offense. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). RICO provision 18 U.S.C. § 1961(4) defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

RICO requires that the "person" who is employed by or is associated with the related "enterprise" be charged with a predicate offense, *id.*, and that a nexus exist between the "enterprise" and the predicate offense through a pattern of racketeering activity. *United States v. Brooklier*, 685 F.2d 1208, 1216 (9th Cir.1982). RICO defines "person" as including "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

Assuming that Benny's fraudulent activity constituted a pattern of racketeering activity as that term is defined in the statute,[1] and that Benny conducted the affairs of his sole proprietorship through this pat-

---

1. "Pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5).

"Racketeering activity" includes any activity indictable under title 18, United States Code. 18 U.S.C. § 1961(1).

tern, and that this conduct caused the injuries upon which the conviction was based, the indictment on count thirty-two was nevertheless sufficient only if the RICO statute provides that a sole proprietorship can be an "enterprise" with which the proprietor can be "associated".

Benny argues that the aforementioned proposition is a tautology: since he was a sole proprietorship he could not simultaneously associate with that sole proprietorship; one cannot associate with oneself any more than one can conspire with oneself. Citing *United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir.1983) (group of individuals conspiring to fix college basketball game an "association in fact" subset of RICO "enterprise"), Benny concedes that this unworkable syllogism could have been avoided if the government had worded the indictment to charge Benny to be involved with an "association in fact," presumably among the other codefendants. The indictment, however, charged Benny to be associated with the enterprise "George I. Benny." Consequently, Benny argues that count thirty-two of the indictment was insufficient and must be reversed.

County thirty-two (the RICO count) distinguishes between George I. Benny, the enterprise, and George I. Benny, the individual alleged to be associated with the enterprise. It was alleged that "... George I. Benny has been an enterprise as that term is defined in Title 18, United States Code, Section 1961(4)." It was further alleged that "... George I. Benny, Ariel Basse, James S. Urbanski, James A. Fagerhaugh, defendants herein, were employed by, and associated with, George I. Benny, the enterprise." The indictment thus separated defendant Benny, an individual, from the enterprise, an association of four individuals allegedly operating under the name of one of them.

Benny bases his argument on Ninth, Seventh and Fourth Circuit holdings that in a given pattern of racketeering under RICO a corporate defendant cannot also be the related "enterprise." *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984); *United States v. DiCaro*, 772 F.2d 1314, 1319–20 (7th Cir.1985); *Haroco v. American National Bank*, 747 F.2d 384, 399–400 (7th Cir.1984), aff'd on other grounds, —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *United States v. Computer Sciences*, 689 F.2d 1181, 1190 (4th Cir.1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). But see *United States v. Hartley*, 678 F.2d 961, 987–90 (11th Cir.1982), cert. denied, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983) (corporation may be both liable "person" and related "enterprise"). Of the three, *Haroco* 747 F.2d at 400 offers the best rationale for this holding:

> We do not doubt that a corporation may satisfy the section 1961 definitions of both "person" and "enterprise,".... But we focus our attention on the language in section 1962(c) requiring that the liable person be "employed by or associated with any enterprise" which affects interstate or foreign commerce. The use of the terms "employed by" and "associated with" appears to contemplate a person distinct from enterprise. If Congress had meant to permit the same entity to be the liable person and the enterprise under section 1962(c), it would have required only a simple change in language to make that intention crystal clear.

Recently, in *McCullough v. Suter*, 757 F.2d 142, 143–44 (7th Cir.1985), the Seventh Circuit addressed this identical question. The facts in *McCullough* involved a RICO count brought against a defendant whose sole proprietorship was the "enterprise" with which the defendant proprietor "associated." The court held that such a RICO count was sufficient. *Id.* at 144.

The court reasoned as follows. A sole proprietorship is a recognized legal entity, and, provided it has any employees, is in any event a "group of individuals associated in fact." *Id.* at 143. Admittedly there is a problem if the sole proprietor is strictly "a one-man show." Thus, if an individual had no employees or other associates it strains the imagination to say that the indi-

vidual associated with an enterprise comprised solely of himself or herself. That is the same as saying you can conspire with yourself. For this reason, *Rae v. Union Bank, Haroco,* and *Computer Science* hold that a corporate defendant cannot be employed by itself or associate with itself.

Concededly the distinction wears thin when one considers that a sole shareholder of a corporation would, under the language of the statute, be able to "associate" with that corporation. However, such a corporate "one-man band" does receive some legal protections from the corporate form, and it is this sort of legal shield for illegal activity that Congress intended RICO to pierce. While a sole proprietorship with employees or associates does not receive similar legal protections "[t]he only important thing is that [the enterprise] be either formally (as when there is a corporation) or practically (as when there are other people beside the proprietor working in the organization) separable from the individual." *McCullough,* 757 F.2d at 144.

■ We adopt the Seventh Circuit's analysis as the rule for this circuit. The rule avoids the ontological conundrum of interpreting RICO to make liable an individual who associates with himself or herself, while it maintains at the same time RICO's ability to discourage and punish illegal activity associated with various groups.

Since Benny's co-defendants were employed by or associated with the sole proprietorship "George I. Benny," count thirty-two is sufficient and must stand. Benny's sole proprietorship was a troupe, not a one-man show.

## II. Jury Instructions
### STANDARD OF REVIEW

■ Generally, challenges on appeal to instructions which contest the district court's language or formulation of a particular instruction are reviewed for an abuse of discretion. *United States v. Miller,* 771

F.2d 1219, 1238 (9th Cir.1985); *United States v. Echeverry,* 759 F.2d 1451, 1455 (9th Cir.1985); *United States v. Marabelles,* 724 F.2d 1374, 1383 (9th Cir.1984). A trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented. *Marabelles,* 724 F.2d at 1382–83.

■ When no specific objection is made to an instruction, the alleged error cannot be reviewed on appeal, except in those very narrow circumstances denominated as plain error. *United States v. Vincent,* 758 F.2d 379, 382–83 (9th Cir.1985); *United States v. Krasn,* 614 F.2d 1229, 1235 (9th Cir. 1980); Fed.R.Crim.P. 30, 52(b).

■ In cases in which defendants themselves propose the instruction, review is totally barred under the invited error doctrine. *United States v. Alexander,* 695 F.2d 398, 402 (9th Cir.1982).

### ANALYSIS

Benny attacks on four grounds the intent to cause harm instruction. First, the instruction failed to convey his contention that he intended no harm toward the lenders. Second, the instruction failed to explain that an intent to cause harm requires either (1) loss to the victim or (2) gain to Benny. Third, the jury was not instructed that if Benny and an agent of the lender were both aware of the "true" facts, Benny could not have an intent to deceive even if he made false statements to other agents of the lender. Finally, the trial court refused to instruct that an intent to repay the loans could negate intent to defraud.

The record indicates that when the trial court was considering the government's proposed intent to defraud instruction, Benny submitted an entirely new instruction on the question which the government accepted, and the trial court adopted and read to the jury[2]. The only objection Benny made

2. The intent instruction read as follows:
Now, what is meant by intent to defraud? The defendant is charged with acting with intent to defraud. To prove that charge in this case the Government must prove beyond a reasonable doubt that the defendant knowingly did

was to protest the court's decision to exclude from the instruction the "good faith intent to repay" defense.

■ Because Benny himself proposed the instructions which the court ultimately used, review is barred under the invited error doctrine. *Alexander*, 695 F.2d at 402.

■ The record indicates that Benny's only objection was to the exclusion of the "good faith intent to repay" defense instruction.[3] The district court did not abuse its discretion in excluding this defense. While an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all. *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir.1979) ("an honest belief in the ultimate success of an enterprise is not, in itself, a defense").

Benny's reliance on *Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896) is inapposite. *Durland* contains language suggesting that in those check-kiting cases in which there is no intentional misrepresentation, the defendant's ability to cover is frequently the only real issue regarding intent. If the defendant reason-

ably believed he or she could cover, there was no intentional misrepresentation and hence no crime. Id. at 313, 16 S.Ct. 508. See *Williams v. United States*, 278 F.2d 535, 537 (9th Cir.1960).

No court has extended the repayment defense beyond check-kiting cases. *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir.1979); *United States v. Scott*, 701 F.2d 1340, 1346–48 (11th Cir.1983). Courts distinguish the knowing falsification of loan information from the reasonable belief that a check can be covered. Benny admitted at trial that he falsified information submitted to the loan officers and thus was not entitled to an intent to repay defense in the mail fraud instruction.

### III. Omission Or Nondisclosure of Material Facts

#### STANDARD OF REVIEW

■ Ordinarily, this court will review de novo a district court's interpretation of a statute. See *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), cert. denied, ── U.S. ──, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *United States v. Mehrmanesh*, 689 F.2d 822, 827 (9th Cir.1982). Here, however, the claim on appeal was not raised below. Accordingly, the standard of re-

---

an act with intent to deceive the lenders in order to obtain or maintain loans that the lenders otherwise would not have made at all or loans larger in amount than the lenders otherwise would have made. Thus, you must determine whether the defendant intended to deceive or mislead the lenders about material facts.

However, the evidence in the case need not establish that any lender was actually defrauded, but only that the accused acted with intent to defraud, as defined above.

There can be no intent to deceive where it is known by the person making the representations that the lender who will be receiving the representations already knows they are false representations.

Some of the lenders involved here were corporations, and others of the lenders were individuals. Thus, in the case of a corporate lender, if the defendant disclosed the material facts to an agent or representative of the corporation, there was no intent to deceive that corporation, unless the defendant intended to deceive another agent or representative of the corporation in order to obtain or maintain a loan by the corporation.

In the case of an individual lender, if the defendant disclosed the material facts to an agent or representative of the individual lender then there was no intent to defraud that individual, unless the defendant intended to deceive another agent or representative of the lender or the lender himself or herself in order to obtain or maintain a loan by the lender.

**3.** The district court's instruction read as follows:

Fraudulent intent is not presumed or assumed; it is personal and not imputed. One is chargeable with his own personal intent, not the intent of some other person. Bad faith is an essential element of fraudulent intent. Good faith constitutes a complete defense to one charged with an offense of which fraudulent intent is an essential element. One who acts with honest intention is not chargeable with fraudulent intent.

Neither an honest belief by the defendant in the ultimate success of a plan nor the actual or intended repayment of the loan is itself a defense if the elements of the offense are established.

**1418**

view is plain error. *United States v. Kennedy,* 714 F.2d 968, 976–77 (9th Cir.1983); *United States v. Lopez,* 575 F.2d 681, 685 (9th Cir.1978); Fed.R.Crim.P. 52(b).

## ANALYSIS

Benny contends that because his conduct involved the omission or non-disclosure of material facts by a non-fiduciary, the mail fraud statute cannot support his conviction. This court's recent decision in *United States v. Dowling,* 739 F.2d 1445, 1449 (9th Cir.1984), rev'd on other grounds, — U.S. —, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985), does indeed stand for the proposition that:

> a non-disclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged. This independent duty may exist in the form of a fiduciary duty to third parties (citations omitted), or may derive from an independent explicit statutory duty created by legislative enactment (citation omitted).

The record reveals, however, that Benny's fraud was active, not constructive. Benny did not simply omit to advise Wells Fargo Bank that the purchase price of DHV was $12.5 million; he affirmatively misrepresented the price as $14.5 million. Similarly, Benny affirmatively told Wells Fargo that he was investing $2 million of his own in the deal, when in fact he did not. In furtherance of his three fraudulent schemes, Benny submitted or caused to be submitted more than 250 false loan applications, all containing affirmative misrepresentations.

Proof of an affirmative, material misrepresentation supports a conviction of mail fraud without any additional proof of a fiduciary duty. See, e.g., *United States v. Halbert,* 640 F.2d 1000, 1007 (9th Cir. 1981) (false and fraudulent pretenses); *United States v. Bohonus,* 628 F.2d 1167, 1172 & n. 8 (9th Cir.1980) (affirmative misrepresentation); *United States v. Allen,* 554 F.2d 398, 410 (10th Cir.), cert. denied, 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977) (deceitful statements or half-truths);

*Cacy v. United States,* 298 F.2d 227, 228 (9th Cir.1961) (fraudulent misrepresentations). The district court did not err in maintaining the mail fraud counts.

## IV. Diversion of Mail
### STANDARD OF REVIEW

The district court's findings on this purely factual issue may not be overturned unless clearly erroneous. *United States v. McConney,* 728 F.2d at 1200–01.

## ANALYSIS

Benny contends that the bankruptcy trustee's diversion of his mail for a period four months before the trial began violated his constitutional rights to due process and to counsel. The district court held a lengthy hearing and found that in the bankruptcy case the interception had violated Benny's constitutional right to privacy and his right of free expression. *In re Benny,* 29 Bankr. 754, 764–67 (N.D.Cal. 1983). In the criminal matter, however, the court found that there was no evidence "that the government either intentionally, or unintentionally, obtained information relevant to the criminal proceeding." Id. at 768–69.

A review of the testimony heard at the March 21, 1983 hearing demonstrates that the district court's finding was correct. No evidence of receipt by the government was shown. Since the district court's ruling is not erroneous, the ruling is affirmed.

### V. Selective Prosecution
### STANDARD OF REVIEW

The district court's denial of a motion to dismiss for selective prosecution is reviewed under the clearly erroneous standard. *United States v. Christopher,* 700 F.2d 1253, 1258 (9th Cir.), cert. denied, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).

## ANALYSIS

Benny asserts that he was selectively prosecuted since others involved in the scheme were not charged. Benny has

the burden of proving selective prosecution. *United States v. Heldt,* 745 F.2d 1275, 1280 (9th Cir.1984); *United States v. McWilliams,* 730 F.2d 1218, 1221 (9th Cir. 1984). Benny must demonstrate (1) that others similarly situated have not been prosecuted, and (2) that he was selected for prosecution on the basis of an impermissible ground such as race, religion or exercise of constitutional rights. *McWilliams,* 730 F.2d at 1221.

■ Benny does not meet his burden. All of Benny's principal abettors—Hess, Basse, Fagerhaugh, Urbanski and Lawrence—were indicted. All pleaded guilty and accepted lesser sentences in exchange for their testimony at trial. No claim of selective prosecution can be sustained on this record.

## VI. Perjured Testimony
### STANDARD OF REVIEW

■ The district court's findings of fact are binding on appeal, unless clearly erroneous. *United States v. McConney,* 728 F.2d at 1200–01.

### ANALYSIS

■ Benny asserts that the government knowingly elicited inconsistent and perjured testimony on re-direct examination from his accomplice, James Fagerhaugh, after the prosecution talked to Fagerhaugh at a recess following cross examination.

The district court found no evidence to suggest that the prosecutor induced Fagerhaugh to change his testimony. The record shows that the prosecutor told Fagerhaugh, with an FBI agent present, to testify truthfully. The agent was not cross-examined on this claim by the defense.

Since the district court's findings are not clearly erroneous, the court's ruling is affirmed.

## VII. Excluded Testimony
### STANDARD OF REVIEW

The district judge has wide discretion in determining whether evidence is supported by proper foundation, and whether its probative value substantially outweighs any danger of unfair prejudice. *United States v. Ford,* 632 F.2d 1354, 1377 (9th Cir.1980). The trial judge enjoys wide latitude in determining the admissibility of evidence because he or she is in the best position to assess the impact and effect of evidence based upon what he or she perceives from the live proceeding of trial. *Id.* The admission of evidence will not be overturned on appeal absent an abuse of discretion. Id. *Accord United States v. Miller,* 771 F.2d 1219, 1233 (9th Cir.1985).

### ANALYSIS

■ Benny claims the court erred in excluding certain testimony of FNMA officers Bandy and Bollis. Neither witness had personal dealings with the involved lenders or personal knowledge of the transactions charged in the indictment. The defense did call two experts who testified at length about bank lending practices and appraisal procedures. On the basis of the record, the district court did not abuse its discretion in excluding the testimony.

## VIII. Testimony of Ariel and Jewel Basse
### STANDARD OF REVIEW

■ The district court's limitation of cross-examination of a witness to specific instances of conduct while prohibiting extrinsic proof on the issue of credibility is reviewed for abuse of discretion. *United States v. Fortes,* 619 F.2d 108, 118 (1st Cir.1980).

### ANALYSIS

Benny asserts that the district court erred in refusing to permit him to be recalled to contradict the testimony of Ariel and Jewel Basse. The Basses testified that they had not received special consideration from the prosecutor.

■ The district court properly exercised its discretion to preclude Benny from again testifying. Benny had already left the stand after testifying for two weeks. Ariel Basse had testified earlier and was

cross-examined for three days. Here, the court permitted cross-examination of both Ariel and Jewel Basse. Benny may not offer extrinsic evidence, including his own testimony, to attack the Basse's credibility. *United States v. Bosley,* 615 F.2d 1274, 1276–77 (9th Cir.1980); Fed.R.Evid. 608(b). Thus, the district court did not abuse its discretion in denying Benny's motion to retake the stand.

## IX. Mailing of Financing Statement
### STANDARD OF REVIEW

A district court's ruling on a mixed fact/law question, which is principally factual in nature, is reviewed under the clearly erroneous standard. *United States v. McConney,* 728 F.2d at 1202.

### ANALYSIS

Benny contends that the mailing charged in count one was not in furtherance of the scheme to defraud Wells Fargo Bank. Benny argues that the mailing of the financing statement to the California Secretary of State was too remote to advance the purpose of the scheme, *United States v. Maze,* 414 U.S. 395, 399, 94 S.Ct. 645, 414 U.S. 395 (1974).

The issue was raised below on a Rule 29 motion. The government responded that the mailing was an integral part of the loan transaction and occurred while the scheme was still in progress. The district court found that "there is evidence that the scheme continued on with respect to the Wells Fargo transaction," and denied the motion.

██ A mailing need not itself be false to be in furtherance of a scheme to defraud, *United States v. Buckley,* 689 F.2d 893, 898 (9th Cir.1982), nor need it be "essential" to the scheme. *United States v. Mitchell,* 744 F.2d 701, 703 (9th Cir.1984). Rather, the mailing must be "closely entwined" with or "closely related" to the scheme. *United States v. Maze,* 414 U.S. at 399, 94 S.Ct. 647–48; *United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir.1981).

██ The mailing in count one clearly satisfied these requirements. The financing statement, which Benny signed on 15 November 1977 as a recording requirement was mailed to the Secretary of State on 17 November 1977. Such a filing was required by California law. Even though the loan closed on 15 November 1977, only $12.8 million was then distributed; the remaining $700,000 was distributed to Benny between December 1977 and March 1978.

The mailing of the financing statement was an integral part of the entire loan transaction. The district court did not clearly err in denying Benny's motion below.

## X. Perjured Testimony Before the Grand Jury
### STANDARD OF REVIEW

██ This court reviews de novo the district court's findings regarding the alleged violations of a criminal defendant's fifth amendment rights. *United States v. Sears, Roebuck & Co., Inc.,* 719 F.2d 1386, 1392 n. 9 (9th Cir.1983).

### ANALYSIS

██ Benny claims that the district court should have dismissed the indictment because it was based on the perjured testimony of Hugh Levine. The standards a trial judge must consider in deciding the appropriateness of dismissal based on perjured testimony before a grand jury are summarized in *United States v. Kennedy,* 564 F.2d 1329, 1338 (9th Cir.1977):

only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury. To hold otherwise would allow a minitrial as to each presented indictment contrary to the teaching by Mr. Justice Black in Costello....

*Accord United States v. Claiborne,* 765 F.2d 784, 791 (9th Cir.1985).

The record suggests that this was not a case of a "flagrant" deception of the grand

jury. The record indicates that the grand jury was aware of the possibility that Levine had lied. Further, the grand jury's indictment of Benny was based on evidence presented by numerous other witnesses. Finally, no showing was made that the government procured or condoned false testimony by Levine.

On these facts, the denial of Benny's motion to dismiss the indictments was correct. Even assuming, arguendo, that Levine's testimony was perjured, dismissal of the indictment was not warranted where record showed that the grand jury had heard other competent testimony, *Sears*, 719 F.2d at 1392 (9th Cir.), or when grand jurors were aware that witness had perjured himself and his testimony was not material to grand jury's consideration. *Id.*

### XI. Sentencing
#### STANDARD OF REVIEW

■ Where the sentence, as here, is within statutory limits, it will be reviewed only for an abuse of discretion. *United States v. Garrett*, 680 F.2d 650, 652 (9th Cir.1982).

#### ANALYSIS

■ Finally, Benny contends that because he received six consecutive five year sentences for mail fraud, whereas his co-defendants, who pleaded guilty, received lesser sentences, the "inference to be drawn" is that he was punished for exercising his right to trial.

The district court provided a formal explanation of the sentencing. Among the factors the court considered were "the enormity of the fraud," "the amount of loss," "the pain and suffering ... caused" by Benny's "lack of remorse," and his "willingness to swear under oath to tell the truth and then to disregard that oath."

No abuse of discretion is shown.

#### CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.