UNITED STATES of America, Plaintiff,

v.

PRIVATE SANITATION INDUSTRY AS-SOCIATION OF NASSAU/SUFFOLK, INC.; Local 813 of the International Brotherhood of Teamsters; A-1 Carting Company; AA & M Carting Company; Ace Garbage & Rubbish Removal, Inc.; All Weather Carting Corporation; Associated Waste Disposal Company; B & D Carting, Inc.; Bonsera, Inc. d/b/a Star Carting Corp.; Budget Roll-Off Systems, Inc.; C & C Refuse Carting Corporation; Ciano and Sons Carting Co., Inc.; Comet Carting Company; Daniel Finley Allen Co., Inc.; Delta Carting Corporation; Dependable Sanitation Corp.; Detail Carting; Enviro Carting Company d/b/a Island Carting Company; Ever Ready Sanitation Corporation; Harbor Carting Corp.; Hickey's Carting, Inc.; Hillside Carting Company, Inc.; Jamaica Ash & Rubbish Removal Co., Inc.; Long Island Rubbish Removal Corp.; Maggio's M & P Carting Service, Inc.; MCM Sanitation, Inc. d/b/a Island Carting Company; Metro Waste, Inc.; Mets Roll-Off Service, Inc.; Monbro Sanitation Service, Inc.; Prudential Waste Disposal, Inc.; Sail Carting & Recycling Corp.; Salem Sanitary Carting Corporation; South Side Carting Co., Inc.; SSC Corporation; Standard Commercial Cartage, Inc.; Sun Carting, Inc.; Sunset Sanitation Corp.; Superior Waste Systems, Inc.; TWA Carting Corporation; II Cousins Carting Corp.; U-Need-A-Roll-Off Corporation; Unique Sanitation Corp.; Vigliotti Brothers Carting Corporation; Vinnie Monte's Waste System, Inc.; V & J Rubbish Removal, Inc.; Wayside Carting, Inc.; Michael Acquafredda; Bernard Adelstein; John Allen; Sarah Allen; James Allesandria; Vito Aniello; Salvatore Avellino, Jr.; Joseph Bonsera; Michael Bonsera; Charles Cannizzaro; Richard Carey; Pasquale Casagrande; Richard Ciano; Raniero Colatosti; Craig Comerford; Antonio Corallo; James J. Corrigan, Jr.; Edward DeMatteo; Ernest De-Matteo; Emedio Fazzini; Joseph Ferrante; Nicholas Ferrante; John Guglielmo; John Haynes; Dennis Hickey; Robert Husak; Jerome Kowalski; Vincent Maggio; Michael Malena; John Maratea; Peter Marcello; Anthony Miello; Anthony Montesano, Jr.; Vincent Montesano; Anthony Natale; Frank Notarantonio; John Pagano; Frank Palopoli; Salvatore Palopoli; David Pamlanye; Steven Pamlanye; Ralph Pantony; Joseph Petrizzo; Joseph Pezza; Pasquale Pezza; Peter Reali; Robert Renna; Arthur Romersa; Thomas Ronga; Franco Rotundo; Salvatore Santoro; Robert Schuman; John Senia; Pat Sesti; Peter Stramiello; Glenn Thweatt; Orlando Velocci; Anthony Vespucci; Allen Vesting; Arnold Vigliotti; Glen Vilchek; Joseph Vittorio; Michael Walstrum; and James Winters, Defendants.

No. CV-89-1848.

United States District Court,
E.D. New York.

Sept. 9, 1994.

862

Christopher Lehmann, Jody Kasten, Asst. U.S. Attys., Brooklyn, NY, for plaintiff.

Paul A. Batista, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Defendant Joseph Ferrante ("Ferrante") moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, dismissing in part the complaint brought against him pursuant to the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 et seq. ("RICO"). Plaintiff, the United States of America (the "government"), requests a continuance to conduct further discovery pursuant to Federal Rule of Civil Procedure 56(f) and, alternatively, opposes defendant's motion. For the following reasons, defendant's motion for partial summary judgment is denied, except as noted below. Because of this determination, the government's request for a continuance is moot.

## FACTS

The United States brought this civil RICO action against 112 defendants, alleging that they engaged in a pattern of racketeering activity by committing illegal acts and by using force and threatening to use force against other individuals engaged in the collection of solid waste on Long Island. The underlying facts and the identities of the various defendants are set out in United States v. Private Sanitation Industry Association, 793 F.Supp. 1114, 1121–23 (E.D.N.Y. 1992) ("PSIA"), familiarity with which is assumed.

For purposes of this motion, the relevant facts are as follows. Prior to July of 1988, Ferrante was Vice President of co-defendant Unique Sanitation Corp. ("Unique Sanitation"). In July of 1988 he became President of Unique. Plaintiff's Response to Defendant's Rule 3(g) Statements ("Pl.'s 3(g) Statement"), ¶ 12. Unique is a corporation engaged in the business of garbage collection. Ferrante is also Vice President of co-defendant U–Need–A–Roll–Off Corp. ("U–Need"), which is also engaged in the business of garbage collection. Affidavit of Joseph Ferrante, dated April 16, 1993 ("Ferrante Aff'd"), ¶ 7. The corporate defendants are not parties to this motion.

Ferrante is alleged to have violated RICO in connection with those allegations of the complaint related to Arthur T. Mott and Freeport Gardens, Inc. d/b/a Apple Carting ("Apple Carting") (Complaint, ¶¶ 151–153); the Town of Islip (Complaint, ¶¶ 154–159); and the Town of Oyster Bay (Complaint, ¶¶ 160–167).

### The Apple Carting Allegations

Ferrante is alleged to have "knowingly, willfully and intentionally commit[ted] acts, attempt[ed] to commit acts or conspire[d] to commit acts which are indictable under [18 U.S.C. §§ 1951 and 2], as set forth in [18 U.S.C. § 1961(1)(B) ]" between May 1988 to December 1988. Complaint, ¶ 151. It is alleged that Ferrante aided and abetted certain corporations (including Unique Sanitation) (Complaint, ¶ 153) in compelling Apple Carting to participate in an illegal restraint of competition and in not participating in competitive solicitation of carting business "by instilling in [Apple Carting] a fear that, if [it] attempted to or did obtain garbage stops or routes claimed by other carters, [defendants] or others would cause physical injury to [Apple Carting]." Complaint ¶ 152. (Ferrante is also alleged to have committed acts chargeable under state law at the time of their commission as coercion and attempted coercion. Complaint, ¶ 151.)

### The Town of Islip Allegations

It is alleged that between January 1985 and September 1985, Ferrante, U–Need, and others, "knowingly, willfully and intentionally commit[ted] acts chargeable under state law at the time of their commission as [grand larceny ... involving bribery], [attempted grand larceny ... involving bribery], Bribery in the Second Degree, Attempted Bribery in the Second Degree, and Rewarding Official Misconduct in the Second Degree." Complaint, ¶ 154. It is also alleged that Ferrante aided and abetted certain corporations (including Unique) in taking property from the Town of Islip, New York "by unlawfully placing garbage in the Islip town dump, thereby taking garbage disposal space, without paying the required fees." Complaint, ¶ 156.

### The Town of Oyster Bay Allegations

It is alleged that from January 1982 through February 1985, Ferrante, U–Need, and Unique Sanitation "knowingly, willfully and intentionally commit[ted] acts chargeable under state law at the time of their commission as [grand larceny ... involving bribery], [attempted grand larceny ... involving bribery], Bribery in the Second Degree, Attempted Bribery in the Second Degree, Rewarding Official Misconduct in the Second Degree, Bribe Receiving in the Second Degree, Attempted Bribe Receiving in the Second Degree, and Receiving Reward for Official Misconduct in the Second Degree[.]" Complaint, ¶ 160.

It is also alleged that Ferrante and others attempted to and did take property from the Town of Oyster Bay "by unlawfully placing garbage in the Oyster Bay town dump, thereby taking garbage disposal space, without paying the required fees." Complaint, ¶ 161. Ferrante is also alleged to have aided and abetted certain defendants in "solicit[ing] and accept[ing] bribes and rewards[.]" Complaint, ¶ 163.[1]

\*    \*    \*    \*    \*    \*

Ferrante now moves for partial summary judgment on two separate grounds. First, that there are no facts upon which a reasonable jury could conclude that he committed the predicate acts which survived this court's June 29, 1992 Memorandum and Order. Def.'s Memorandum of Law at 18 ("The Government now faces a challenge which it can never meet: the burden of coming forward with evidence establishing a genuine issue of fact indicating that Mr. Ferrante participated in the acts of which the United States accuses him."). Second, that there are no facts upon which a reasonable jury could conclude that Ferrante participated in a "pattern of racketeering activity" as that term is understood in RICO parlance. *Id.* at 19 ("Even if the Government fully contradicted, with admissible evidence, each and every factual assertion in the Ferrante Affidavit and thus created an issue for trial as to defendant's

commission of predicate racketeering acts, the United States still would not be able to point to facts showing that Mr. Ferrante engaged in a 'pattern of racketeering activity.' ").

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In order for the moving party to be successful, it must "point[ ] out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In opposing a properly supported summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-movant, therefore, "must do more that simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986), because "[t]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

As the Court noted, "[t]he moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. In deciding a summary judgment motion, the court need not resolve disputed issues of fact, but need

---

1. In *PSIA,* this court dismissed the conspiracy counts of the complaint which were based upon 18 U.S.C. § 1962(d); held that the predicate acts of racketeering activity based upon the New York

State statutory law of coercion or those acts consisting of "grand larceny ... involving bribery" were legally insufficient; and struck plaintiff's claims for monetary relief. *Id.* at 1161.

only determine whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir. 1988). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a reasonable jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "In assessing the record to determine whether there is a genuine issue of fact, the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).

## II. *Civil Rico Liability*

To state a cause of action under RICO, 18 U.S.C. § 1962(a)–(c), a plaintiff must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).[2] Of these elements necessary for liability for violation of the civil RICO statute, Ferrante contends that (i) there are no facts indicating that he committed any of the predicate acts alleged in the complaint; and (ii) there is no evidence that he engaged in a "pattern of racketeering activity."

### A. *Racketeering Acts*

#### 1. *The Apple Carting Allegations*

Section 1961(1) of Title 18 of the United States Code provides in relevant part that "racketeering activity" includes:

> (A) any act or threat involving ... arson, robbery, bribery, [or] extortion ... which is chargeable under State law and punishable by imprisonment for more than one year;

> (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1951 [relating to interference with commerce, robbery, or extortion]. ...

In dismissing those predicate acts based on the New York statutory law of coercion or grand larceny, or acts of "grand larceny ... involving bribery," the court also held that the predicate acts of extortion were properly pleaded. *PSIA*, 793 F.Supp. at 1139. Section 1951(b)(2) provides that "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." The definition of "property" under Section 1951(a) is defined broadly by the courts and includes Apple Carting's right to pursue garbage stops. *United States v. Tropiano*, 418 F.2d 1069, 1075–76 (2d Cir.1969) (property under the Hobbs Act "includes, in a broad sense, any valuable right considered as a source or element of wealth."), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970). It is also well settled that the element of fear includes fear of economic loss. *See United States v. Brecht*, 540 F.2d 45, 52 (2d Cir.1976) ("[T]he element of 'fear' required by the [Hobbs] Act can be satisfied by putting the victim in fear of economic loss."), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977).

In his first submission in support of his motion for summary judgment on the Apple Carting allegations, defendant relies on the denials contained in his affidavit, dated April 16, 1993. For example, Ferrante states that, "I can state categorically that I never engaged in any of the conduct alleged against me in the Apple Carting segment of the complaint." Ferrante Aff'd, ¶ 11. Rather than participating in extortion, Ferrante alleges that any attempt by him to induce Apple Carting customers to return to Unique Sanitation was the result of "competitive means." *Id.*, ¶ 13 ("In my discussions with

---

2. As the court noted in *PSIA*: "To the extent that *Moss* reflects an earlier understanding in the Second Circuit as to what constitutes a pattern of racketeering activity, it has, of course, been superseded by later case law. *See, e.g., United States v. Indelicato*, 865 F.2d 1370, 1375 (2d Cir.) (en banc), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989)." *PSIA*, 793 F.Supp. at 1126 n. 16.

customers, I emphasized the quality and reliability of Unique's services, Unique's competitive prices, and Unique's dedication to the customers involved."). Ferrante categorically denies any involvement in "instilling in [Apple Carting] a fear that, if they attempted to or did obtain garbage stops or routes claimed by other carters, [defendants] or others would cause physical injury to [Apple Carting][.]" Complaint ¶ 152. Instead, Ferrante states that "[d]uring my substantial efforts in 1988 to retain Unique's commercial customers, I did not communicate with anyone at Apple Carting." Ferrante Aff'd, ¶ 14. Ferrante also states that any conversations he had with others regarding Apple Carting did not involve "threats, coercion or intimidation of Apple Carting." Ferrante Aff'd, ¶ 14.

In opposition to defendant's motion, the government has submitted a statement pursuant to Local Rule 3(g) consisting of 25 paragraphs and 8 exhibits which it alleges "raise genuine issues requiring a trial." As stated above, in order to find Ferrante liable for a violation of the civil RICO statute, the government must establish, among other things, that he committed two predicate acts which "affect[ ] commerce . . . by robbery or extortion." 18 U.S.C. § 1951(a). In order to defeat defendants's motion for summary judgment, the government must therefore present sufficient evidence such that a reasonable jury could return a verdict in its favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), regarding violations of, or a conspiracy to violate, the Hobbs Act in relation to Apple Carting.

In this regard, plaintiff has submitted evidence upon which a reasonable jury could determine that there were numerous incidents of property damage, threats and intimidation which occurred at Apple Carting's place of business as well as at customer stops which had previously been serviced by Unique Sanitation. Pl.'s 3(g) Statement, ¶¶ 15, 16. During the deposition of Robert Mott (a former principal of Apple Carting), a document was produced which lists numerous incidents involving, among other things, the destruction of Apple Carting containers,

threats made to Apple Carting employees, and the loss of certain Apple Carting clients. Pl.'s 3(g) Statement, Ex. E, Dep. Ex. 4 (undated). Robert Mott testified as follows:

Q. Can you tell us, once again, the purpose for which Exhibit 4 was created?

A. The information in the exhibit was created as a normal course of business by Apple Carting during its first number of months in business; where there were any number of problems with an account for whatever reason, a note to that effect was put into that particular account's file.

Q. Is this document, in effect, a compilation of various notes that were put in other files?

A. Yes.

Pl.'s 3(g) Statement, Ex. E at 59. Exhibit 4, therefore, is a document produced in Apple Carting's normal course of business.

Also produced was a memorandum dated December 19, 1988, prepared by Apple Carting's former counsel Proskauer Rose Goetz & Mendelsohn ("Proskauer"), entitled "Pattern of Extortion, Violence and Intimidation Against Freeport Gardens Inc., d/b/a Apple Carting." (the "Proskauer Memorandum" or "Deposition Exhibit 6"). It is addressed to Andrew J. Maloney, United States Attorney for the Eastern District of New York. As its title indicates, the memorandum lists numerous incidents of intimidation of Apple Carting customers, theft and destruction of Apple Carting property, threats to Apple Carting employees, and harassment of Apple Carting customers. Pl.'s 3(g) Statement, Ex. E, Dep. Ex. 6. Robert Mott testified that this document was not prepared at the request of Arthur Mott or himself. Reply Affirmation of Paul A. Batista, November 12, 1983, Ex. 4 (Deposition of Robert Mott), at 190. He also testified that he informed Proskauer that he viewed their summary as inaccurate. *Id.* Based on these facts, defendant argues that this court cannot consider this document because "we . . . submit that Exhibit [6] . . . would not likely be admissible at trial as evidence for any purposes other than, ironically, for the purpose of allowing the Government to attempt to impeach the credibility of Robert Mott and Arthur Mott, and should not be accorded any weight in the context of

this motion." Def.'s Reply Memorandum of Law at 7.

Defendant's argument must be rejected for two reasons. First, as defendant appears to concede, *id.*[3], "a party opposing summary judgment need not prove its evidence in admissible form." *Gache v. Town of Harrison, N.Y.*, 813 F.Supp. 1037, 1052 (S.D.N.Y.1993); *Healey v. Chelsea Resources, Ltd.*, 736 F.Supp. 488, 491–92 (S.D.N.Y.1990) ("Although a party opposing summary judgment need not prove its evidence in a form admissible at trial or under the evidentiary standard which will be required, it must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists.") (citing *Anderson*). Second, even if the form of the December 1988 memorandum is hearsay in nature, it is evidence which is potentially admissible at trial and "courts ... admit and rely upon letters and other documents that constitute evidence potentially admissible at trial." Edward Burnet, *Summary Judgment Materials*, 147 F.R.D. 647, 656 (1993). *See, e.g., Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 38 (D.C.Cir. 1987) (in responding to defendant's motion for summary judgment plaintiff produced letter from one non-party to another non-party and Court of Appeals holds that trial court can consider the letter, even if *inadmissible*, because the substance of the letter is ultimately reducible to an admissible form through the third party's projected appearance as a witness at trial), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The December 1988 memorandum constitutes evidence potentially admissible at trial and therefore this court may consider it.

Together, Deposition Exhibits 4 and 6 list incidents of harassment and intimidation by Unique and others against Apple Carting. These incidents include the following: (i) an Apple Carting driver was threatened by a Unique Sanitation representative on or about July 15, 1988 (Pl.'s 3(g) Statement, Ex. E, Dep. Ex. 4 at 2); (ii) a former commercial client of Unique Sanitation cancelled his contract with Apple Carting after one of his containers had been moved and it was reported that he stated that he "was afraid and didn't want to get involved" (Pl.'s 3(g) Statement, Ex. E, Dep. Ex. 6 at 15); (iii) an Apple Carting client cancelled its contract and "Robert Mott was informed by his driver that the customer was petrified." (*id.* at 6); (iv) a representative of Unique Sanitation told an Apple Carting customer that he ordered a Unique Sanitation driver to overturn an Apple Carting container and said "I told my driver to do it. Why did you change to Apple?" (*id.* at 16); (v) a former client of Unique Sanitation cancelled its contract with Apple Carting after its containers were "repeatedly stolen and moved." (*id.* at 9); and (vi) several Apple Carting clients cancelled their contracts very soon after signing with Apple Carting (*id.* at 7, 10 and 15).[4]

The government has also brought forward facts upon which a reasonable jury could conclude that defendant Ferrante committed or aided and abetted in the acts listed above. Specifically, Ferrante states in his affidavit that in 1988 he was "aware of Apple Carting and its business activities at that time." Ferrante Aff'd, ¶ 12. He also states that in 1988 "I was advised by a number of Unique's commercial customers that Apple Carting's salesmen had approached these customers and offered steep discounts in garbage collection services." *Id.* He admits that he had contact with former Unique Sanitation customers and attempted to win back their business:

> Rather than simply abandon its long-standing customers, Unique decided to respond to the competitive challenge posed by Apple Carting by competitive means. By 1988, I was more involved in the marketing and customer relations aspects of Unique's business than I had been in the past, and I took on the responsibility for dealing and negotiating with the commercial customers of Unique whose business

---

**3.** "Although we do not argue that, on a motion for summary judgment, a District Court must rely only on material which would be admissible as evidence at trial...."

**4.** Sometime after August of 1989, Arthur Mott sold part of Apple Carting's business to Paragon Carting Corporation which is partly owned by defendant Joseph Ferrante. Declaration of Charles Mastrosimone (former salesman for Apple Carting), August, 1993, ¶¶ 10–11.

had been solicited by Apple Carting. I devoted substantial time and effort to attempting to persuade these customers to remain as Unique customers or to return to Unique in those cases where Apple Carting had succeeded in luring the customers away from Unique. In my discussions with customers, I emphasized the quality and reliability of Unique's services, Unique's competitive prices, and Unique's dedication to the customers involved.

*Id.,* ¶ 13.

In response to the government's opposition to his motion for summary judgment, Ferrante has submitted a reply affidavit which includes 76 paragraphs and contains 14 exhibits totalling several hundred pages. Reply Affidavit of Joseph Ferrante, November 12, 1993 ("Ferrante Reply Aff'd"). In this affidavit, Ferrante refutes the accuracy or characterization of each of the acts listed above and provides other possible explanations as to why certain events occurred. For example, in reference to the entry contained in the Proskauer Memorandum that a former client of Apple Carting's, Park Exxon in Syosset, Long Island, cancelled its contract and "Robert Mott was informed by his driver that the customer was petrified," Pl.'s 3(g) Statement, Ex. E, Dep. Ex. 6 at 6, Ferrante offers the following explanation:

As I testified at my deposition, the Park Exxon in Syosset was another long-standing customer of Unique and one with which Unique had a written contract when the customer was approached by Apple Carting (*see* Exhibit B, Ferrante Tr. at 184–185). I persuaded that customer to remain with Unique by the same means by which I attempted to persuade—sometimes unsuccessfully, since Unique lost a number of customers to Apple Carting—other long-term customers: by listening to the customers' reasons for considering a change, by stressing the quality and reliability of Unique's services, and by offering, where necessary, lower prices or two or three months of free service.

Ferrante Reply Aff'd, ¶ 25.

This theme runs throughout Ferrante's reply affidavit; that is, he denies any wrongdoing in connection with any of the acts contained in Deposition Exhibits 4 and 6 and alleges that any customers who returned to Unique did so because of valid business-related reasons. *E.g., id.,* ¶ 3 ("I *never* extorted or coerced Arthur Mott or Apple Carting, I *never* bribed any official of the Town of Islip or stole property from the Town of Islip, and I *never* bribed any official of the Town of Oyster Bay or stole property from that town.") (emphasis in original); *id.,* ¶ 29 ("it is true that I succeeded in manag[ing] to persuade the Northville Gas Station in Massapequa to remain with Unique] by the same means I have previously described: listening to the customer's point of view and addressing that point of view."). In support of these characterizations, Ferrante has also produced testimony by Robert Mott in which Mott states that (i) he had no direct contact with Ferrante prior to the sale of Apple Carting in 1990 (Ferrante Reply Aff'd, Ex. M at 93–95); and (ii) that to his knowledge, Ferrante was never involved in harassing Apple Carting in any way (*id.,* Ex. N at 43–54).

▮ In refuting the truth of the assertions contained in Deposition Exhibits 4 and 6, Ferrante is asking this court to act as finder of fact and determine, based on his affidavit and the exhibits attached thereto, that the incidents described above either did not happen or have been mischaracterized by the government. In deciding a summary judgment motion, however, the court does not resolve disputed issues of fact; it is only concerned with determining whether there is any genuine issue to be tried. *Eastman Mach. Co., Inc. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). Plaintiff, on the other hand, has produced evidence upon which a reasonable jury could conclude that acts of extortion were committed against Apple Carting by Unique Sanitation (*i.e.,* the taking away of garbage stops through actual or threaten use of violence or fear). There is also evidence that defendant Ferrante had "[taken] on the responsibility for dealing and negotiating with the commercial customers of Unique whose business had been solicited by Apple Carting." Ferrante Aff'd, ¶ 13. Based on this fact, it cannot be said that a reasonable jury could not conclude that Fer-

rante committed, aided or abetted the commission, or conspired to commit,[5] the predicate acts of extortion. Because any ambiguity must be resolved in favor of the non-moving party and all reasonable inferences must be drawn against the moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), summary judgement on the Apple Carting allegations must be denied.

### 2. *The Town of Islip Allegations*

The basis for defendant's motion for summary judgment on the Town of Islip allegations are the denials contained in his affidavit. He states that "I did not participate in the acts alleged in the Islip segment of the present complaint." Ferrante Aff'd, ¶ 19. He also states that "I did not 'aid and abet' any of the corporate defendants in 'taking garbage disposal space' in Islip," and that "I never bribed, attempted to bribe, or participated with anyone in any bribe or attempt to bribe any Islip employee." *Id.,* ¶¶ 20, 21.

In response, plaintiff has produced the following facts. Between August 1985 through September 1985, the Rackets Bureau of the Suffolk County District Attorney's Office conducted a video-surveillance of the Town of Islip landfill as part of its investigation into fraud at the landfill. Declaration of Detective–Lieutenant Alan Rosenthal of the Suffolk County Police Department, August 18, 1993 ("Rosenthal Decl."), ¶¶ 1–4, 10. Detective–Lieutenant Rosenthal has stated that, based on a review of documents obtained and created in the course of his investigation, U–Need trucks entered the Town of Islip dump and dumped the contents of their containers without obtaining a dumping ticket on a total of 15 occasions between August 2, 1985 and September 19, 1985. *Id.,* ¶ 10. "On [these] dates, a total of 31 roll-off trucks and 6 compactor trucks designated as [U–Need] vehicles, entered the Town of Islip landfill and dumped without paying required tipping fees." *Id.,* ¶ 11. It is also undisputed that at this time Ferrante was Vice President of U–Need, Pl.'s 3(g) Statement, Ex. D (Deposition

of Joseph Ferrante) at 258, and listed as the "CONTACT PERSON" on U–Need's application to the Town of Islip for its Solid Waste Collection & Disposal Permit. *Id.,* Dep. Ex. 21. Detective–Lieutenant Rosenthal also stated that "[a]s the contact person, for [U–Need], Joseph Ferrante would have been the individual who was primarily responsible for any inquiries between [U–Need] and the Town of Islip." Rosenthal Decl., ¶ 9. Furthermore, during this period Ferrante drove U–Need trucks and acted as dispatcher. Ferrante Aff'd, ¶ 19 ("In 1985, I was still performing tasks such as driving and dispatching for U–Need[.]").

In his reply affidavit, Ferrante responds with blanket denials and cites to those portions of his deposition where he also denied any wrongdoing in connection with the Town of Islip. Ferrante Reply Aff'd, ¶¶ 57–67. Ferrante also questions the weight of plaintiff's evidence by stating that no affidavits from town employees have been produced tying him to either bribery of officials or fraud at the landfill. *Id.*

■ The predicate acts alleged against Ferrante in the Town of Islip allegations include aiding in the unlawful taking of property from the Town of Islip in violation of, among other things, New York Penal Law Section 20.00 (criminal liability for conduct of another). Section 20.00 of the Penal Law provides:

> When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

N.Y.Penal Law § 20.00 (McKinney 1987). *See generally People v. Kaplan,* 76 N.Y.2d 140, 145, 556 N.Y.S.2d 976, 978, 556 N.E.2d 415, 417 (1990) (implicit in Section 20.00 is the common law maxim that "acts undertaken in relative innocence and without a conscious design to advance the principal's crime

---

**5.** Conspiracy to commit a violation of the Hobbs Act is a predicate act for civil RICO purposes.

18 U.S.C. § 1951(a); *PSIA,* 793 F.Supp. at 1133.

will not support a conviction for accomplice liability."). Therefore, plaintiff will have to establish at trial that U–Need engaged in conduct which constitutes an offense and that Ferrante intentionally aided U–Need in engaging in that conduct.

In opposing defendant's motion for summary judgment, plaintiff has averred facts upon which a reasonable jury could conclude that U–Need was engaging in conduct which constitutes an offense (e.g., dumping the contents of their containers without obtaining a dumping ticket on a total of 15· occasions). Furthermore, plaintiff has produced evidence upon which a reasonable jury could conclude that Ferrante intentionally aided U–Need in engaging in that conduct (e.g., he was the Vice–President of the corporation at this time and drove trucks for the corporation). Defendant's reply, on the other hand, contains blanket denials, Ferrante Reply Aff'd, ¶ 59 ("neither U–Need nor I took 'garbage . . . space' at the Islip town dump, or assisted or aided anyone else in their taking of 'garbage . . . space' at that dump"), and an attack on the weight of the evidence presented by the Government, id., ¶ 65 ("nor does [Officer Rosenthal] provide any source material— such as video tapes, pictures, or contemporaneous records—to support his assertion that there were a number of occasions . . . when U–Need trucks entered the Islip landfill 'without obtaining a dump ticket. . . .'"). There is a genuine and material issue of fact, therefore, as to whether Ferrante participated in the unlawful taking of town property.

■ Regarding the predicate acts of bribery, Section 200.00 of the Penal Law provides that a person is guilty of bribery "when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." N.Y.Penal Law § 200.00 (McKinney 1988). See People v. Graham, 57 A.D.2d 478, 481, 394 N.Y.S.2d 982, 985 (4th Dep't 1977) ("The gist of the crime of bribery is the effort to secure an impermissible advantage in the decision-making process of government [and is] offering to a public servant a benefit to induce him 'to act or refrain from acting in a matter over which he may be assumed to have power. . . . bribery constitutes influencing official conduct to be performed[.]").

The government has not submitted any evidence upon which a reasonable jury could conclude that Ferrante "confer[red], or offer[red] or agree[d] to confer, any benefit upon a public servant" in the Town of Islip. Although the government has established that Ferrante was the contact person and Vice–President of U–Need at the time of the alleged bribes, unlike the unlawful taking allegations at the landfill, the government has not presented any evidence that U–Need or Ferrante was involved in bribery in the Town of Islip. Evidence of Ferrante's title of Vice President and his role as contact person is not enough to defeat his motion for partial summary judgment regarding these specific allegations.[6] Because "[a]n adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), defendant's motion for partial summary judgment regarding the predicate acts of bribery in the Town of Islip allegations must be granted.[7]

---

6. In its request for a continuance to conduct further discovery pursuant to Federal Rule of Civil Procedure 56(f), plaintiff states that further discovery is only needed in relation to the Apple Carting allegations. Declaration of Joseph D. McCann, September 17, 1993, ¶ 1. Plaintiff has not asserted that further discovery is needed regarding the allegations that Ferrante participated in the bribery of Town of Islip officials.

7. The government argues that summary judgment is not appropriate regarding the Town of Islip allegations because the government may replead and allege violations of the mail fraud statute, 18 U.S.C. § 1341, as predicate acts. However, the proper procedure is not to deny a motion for summary judgment because a party may replead based on new facts; rather, the motion should be granted if the situation dictates and the moving party granted leave to replead if it is warranted. See, e.g., Brown v. E.F. Hutton Group, 735 F.Supp. 1196, 1204–05 (S.D.N.Y. 1990) (court grants defendant's motion for summary judgment on securities fraud allegation but grants plaintiffs leave to replead in order to allege specific, conclusive facts), aff'd, 991 F.2d 1020 (2d Cir.1993). In this case, plaintiff has

### 3. The Town of Oyster Bay Allegations

In support of his motion for partial summary judgment regarding the Town of Oyster Bay allegations (bribery and theft), Ferrante again relies on the denials contained in his affidavit. He states that "[c]ontrary to these allegations, I never bribed or attempted to bribe anyone employed by Oyster Bay," Ferrante Aff'd, ¶ 28, and "[a]t no time did I participate in any conduct which could be construed as 'taking garbage disposal space' from Oyster Bay[.]" *Id.*, ¶ 25. In opposition to defendant's motion, plaintiff has produced the statements of three Town of Oyster Bay employees who state that from at least January 1, 1982, through February 28, 1985, Ferrante was involved in both bribery and fraud at the Town of Oyster Bay landfill.

a. *Joseph R. Vittorio.* Joseph R. Vittorio ("Vittorio") worked at the scalehouse located at the Town of Oyster Bay landfill during the period of January 1982 through February 1985. Declaration of Joseph R. Vittorio, August 6, 1983 ("Vittorio Decl."), ¶¶ 2, 3 and 21 (Pl's 3(g) Statement, Ex. A). Vittorio states as follows:

> Soon after I began work in the scalehouse, I became aware that Nicky Ferrante was paying bribes to have his tipping fees reduced....[8] Throughout the relevant time period, payments were made every two months on behalf of both companies in amounts of $100 per employee with an additional $100 to $150 plus liquor being provided for each employee at Christmas time. The bribes were generally paid by Nicky Ferrante himself who would drive to the scalehouse in his automobile to make the payments. *Nicky's son "Joe" also made a number of payments.* Specifically, Joe Ferrante made at least one bribe payment on behalf of Unique and [U–Need] during each of the relevant time periods....

*Id.*, ¶ 43 (emphasis added).

b. *Jerome J. Kowalski.* Jerome J. Kowalski ("Kowalski") worked as a weigher at the Town of Oyster Bay landfill from 1973

until in or about July of 1987. Declaration of Jerome J. Kowalski, August 24, 1993 ("Kowalski Decl."), ¶ 1 (Pl.'s 3(g) Statement, Ex. B.). Kowalski states that between January 1, 1982 through February 28, 1985, *id.*, ¶ 16, he observed the following:

> I knew [U–Need and Unique Sanitation] to be the same company which ran the garbage trucks under the name Unique and the roll-offs under U–Need–A. They were run by "Nick" Ferrante, but *his son used to occasionally drive trucks for the companies.* During the relevant time periods set forth in paragraph 16 above, Unique's trucks [were] being weighed off scale and U–Need–A's roll-offs had their cubic yardage underrecorded on a regular basis.

*Id.*, ¶ 32 (emphasis added). Kowalski also states he was "'short weighing' the private sanitation trucks entering the landfill and underrecording the volume of their roll-off containers in order to reduce the carters' tipping fees." *Id.*, ¶ 5.

c. *Peter Stramiello.* Peter Stramiello ("Stramiello") worked in the scalehouse at the Town of Oyster Bay's landfill. Declaration of Peter Stramiello, August 5, 1993, ¶ 1 (Pl.'s 3(g) Statement, Ex. C). He states that,

> Throughout the relevant time periods [August 1983 through February 28, 1985], Unique's trucks slipped the scale and the cubic yardage of [U–Need's] roll-offs was reduced by the scalehouse employees. *Both "Nicky" Ferrante and his son (whose name I cannot now recall but who I remember had a beard) would meet separately with Vittorio in the backroom throughout the relevant time frames set above.*

*Id.*, ¶ 39 (emphasis added). Stramiello explained that Vittorio, the supervisor of the scalehouse, would give him money that "was coming from the carters and was in return for the scalehouse employees allowing them to be weighed off scale and/or having their roll-off size underreported." *Id.*, ¶ 9.

In response to the Government's opposition, Ferrante asserts that he "*never* made a

---

not sought leave to replead nor has plaintiff had an opportunity to meaningfully oppose such a request.

**8.** This is a fee charged to a carter for dumping at the town's landfill. *Id.*, ¶ 4.

payment to Mr. Vittorio or any other town employee in Oyster Bay." Ferrante Reply Aff'd, ¶ 69 (emphasis in original). Ferrante also attacks the weight of the government's evidence by stating that the declarations of Messrs. Kowalski and Stramiello do not directly tie him to bribery of town officials. *Id.*, ¶ 70. However, Ferrante does admit that "[t]here were in fact one or two occasions in the 1980s when I did meet with Mr. Vittorio in his office at the Oyster Bay scalehouse," *id.*, ¶ 72, and that during those meetings he was asked if Unique or U–Need would purchase raffle tickets: "I understand that the corporations would from time to time purchase charity raffle tickets as Mr. Vittorio had requested." *Id.*

■ As stated above, bribery involves "confer[ing], or offer[ing] or agree[ing] to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." N.Y.Penal Law § 200.00 (McKinney 1988). The statements of the town officials referenced above establish that plaintiff has met its burden of coming forward with evidence upon which a reasonable jury could conclude that Ferrante committed the predicate acts of bribery.[9] Defendant's response, on the other hand, is a simple denial. Therefore, defendant's motion for summary judgment must be denied. Plaintiff has also produced evidence that Ferrante drove some of the trucks which were involved in not paying their full dumping fees, Kowalski Decl., ¶ 32, thus establishing a basis upon which a reasonable jury could conclude that he was involved in "unlawfully placing garbage in the Oyster Bay town dump, thereby taking garbage disposal space, without paying the required fees." Complaint, ¶ 161.

### B. *Pattern of Racketeering*

■ As stated above, defendant also argues that there is no evidence upon which a reasonable jury could find that Ferrante participated in a "pattern of racketeering" because "the only events alleged in the complaint against Mr. Ferrante assertedly took place in three episodes from 1982 to 1988 [and] [g]iven the absence of any allegation that Mr. Ferrante was involved in any conduct more recent than 1988, the Government can never satisfy the 'pattern of racketeering' element of its § 1962(c) claims against him." Def.'s Memorandum of Law at 19–20.

Section 1962(c) provides that a defendant incurs civil RICO liability only if he "conduct[s] or participate[s], directly or indirectly, in the conduct of [a RICO] enterprise's affairs through a pattern of racketeering activity" or through the collection of an unlawful debt. Section 1961(5) further provides that:

> "[P]attern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within 10 years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]

18 U.S.C. § 1961(5). Therefore, "a defendant must have committed 'at least two' acts of racketeering activity; and, second, the defendant must have committed those acts within a certain period of time." *PSIA* 793 F.Supp. at 1128–29.[10]

However, in order to establish a "pattern" of racketeering activity, the Supreme Court has indicated that more is needed than the commission of two predicate acts within the time period specified by the statute. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492

**9.** Defendant argues that the statement of Vittorio is the "mere existence of a scintilla of evidence in support of the plaintiff's position." Def.'s Reply Memorandum at 14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). However, as demonstrated above, plaintiff has come forward with several statements and facts upon which a reasonable jury could conclude that defendant participated in the predicate acts; the Vittorio declaration does not stand alone.

**10.** There is no dispute that the time frame set out in Section 1961(5) has been met. *Id.* at 1129. Furthermore, as demonstrated above, plaintiff has come forward with facts upon which a reasonable jury could conclude that Ferrante committed the predicate acts.

U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989):

> [T]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose the threat of continued criminal activity.

*Id.* at 239, 109 S.Ct. at 2900 (emphasis added). As this court noted earlier, "[t]his requirement has become known in RICO parlance as 'continuity plus relationship', and it is as essential to the establishment of the 'pattern' element as the demonstration of the predicate acts themselves." *PSIA,* 793 F.Supp. at 1139. The Second Circuit recently noted that "[t]he purpose of the relationship and continuity requirements is to 'prevent the application of RICO to the perpetrators of 'isolated' or 'sporadic' criminal acts.'" *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 520 (2d Cir.1994) (quoting *United States v. Indelicato,* 865 F.2d 1370, 1383 (2d Cir.) (en banc), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989).

### 1. *Relatedness*

■ The Supreme Court in *H.J. Inc.* stated that the necessary relatedness among the criminal acts may be shown by a demonstration that the acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise·are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.,* 492 U.S. at 240, 109 S.Ct. at 2901 (quoting 18 U.S.C. § 3575(e)). *See also Procter & Gamble v. Big Apple Industrial Bldgs., Inc.,* 879 F.2d 10, 16 (2d Cir.1989) ("A pattern may be found ... from an examination of the interrelationship between acts including similarity of goals, methods of their accomplishment, repetitiousness, and closeness of temporal proximity."), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); *Indelicato,* 865 F.2d at 1382 (temporal proximity of predicate acts, common goals, and similarity of methods can establish the necessary relatedness).

Based on the facts submitted by plaintiff, a reasonable jury could conclude that the predicate acts alleged are "related." The predicate acts of bribery in the Town of Oyster Bay, for example, had a similar purpose (reduced tipping fees), victim, method of commission and, based on the declarations discussed above, are not isolated events. The same holds true for the alleged predicate acts in the Town of Islip and Apple Carting allegations.

### 2. *Continuity*

■ The Court has stated that "continuity" is "both a closed- and open-ended concept, referring *either* to· a closed period of repeated conduct, *or* to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902 (emphasis added). Therefore, the Court· held that a party alleging a RICO violation could "demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. at 2902. The Court emphasized that a "pattern" can be established in several ways:

> To establish a RICO pattern it must also be shown that the predicates themselves amount to, *or* that they otherwise constitute a threat of, *continuing* racketeering activity.
>
>     \*     \*     \*·    ·\*     \*     \*
>
> What a plaintiff or prosecutor must prove is *continuity of racketeering activity or its threat, simpliciter.*
>
>     \*     \*     \*     \*     \*     \*
>
> [W]hen Congress said predicates must demonstrate "continuity" before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to *or* threaten long-term criminal activity.

*Id.* at 240, 241, 243 n. 4, 109 S.Ct. at 2901, 2902, 2902 n. 4 (emphasis added). The Court has therefore made it clear that the continuity aspect of RICO jurisprudence is not restricted to activity which, by its nature, threatens continued activity into the future. *See also Center Cadillac, Inc. v. Bank Leumi Trust Co.,* 808 F.Supp. ·213, 233 (S.D.N.Y. 1992) ("A plaintiff can establish continuity notwithstanding the absence of a threat of continuing criminal conduct by pleading a basis from which to infer that the alleged racketeering activity was neither isolated nor

sporadic.") (citing *Procter & Gamble*, 879 F.2d 10 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990)). As demonstrated above, plaintiff has produced evidence upon which a reasonable jury could conclude that Ferrante participated in a "series of related predicates extending over a substantial period of time," and hence summary judgment in his favor would be inappropriate.

In his Memorandum of Law, defendant relies on two Court of Appeals cases decided after *PSIA*, *Apparel Art International v. Jacobson*, 967 F.2d 720 (1st Cir.1992) (Breyer, *J.*), and *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir.1992), for the proposition that the government has failed to come forward with evidence upon which a reasonable jury could conclude that Ferrante was engaged in a "pattern" of racketeering activity. Defendant's reliance on these authorities, however, is misplaced.

In *Apparel Art*, the court affirmed the district court's dismissal of plaintiff's RICO complaint on the ground that the allegations, even if accepted as true, did not amount to a "pattern" of racketeering activity. The plaintiff alleged that the defendants attempted to obtain a Department of Defense contract by bribing certain government officials, lying to certain officials, obtaining confidential information from the Department, and fraudulently conveying its assets in order to prevent the plaintiff from reaching those assets in order to satisfy an arbitration award. Because a single episode of criminal activity composed of several different parts does not constitute a "pattern," the court dismissed the plaintiff's complaint. It wrote,

> The present case, with one exception, involves several instances of criminal behavior—a bribe, several false statements, a cover-up, and (possibly unlawful) access to confidential information. But, these events all took place over a comparatively short period of time.... And, taken together, they comprise a single effort to obtain (and to keep) one $96 million Defense Department contract. Thus, they seem like the single, complex interstate

bank robbery ... and are appropriately characterized as separate parts of a single criminal episode. They do not seem like a string of interstate robberies or frauds, separate criminal episodes so related as to threaten further, "continued," racketeering activities.

*Id.* at 723 (citations omitted).[11] This case is distinguishable: here, the government has advanced evidence that Ferrante participated in, or aided and abetted, the extortion of Apple Carting, the theft of Town of Islip property, and the bribery of Town of Oyster Bay officials, and that these acts extended over a significant period of time, thus amounting to continued criminal activity. Defendant's contention notwithstanding, the evidence need not establish that there is a threat of continued criminal activity into the future.

The court in *Sever* also dismissed a RICO complaint on the ground that the plaintiff had failed to allege a "pattern" of racketeering activity. But in that case as well, "[the defendant's] collective conduct is in a sense a single episode having the singular purpose of impoverishing [the plaintiff], rather than a series of separate, related acts." *Id.* at 1535. The plaintiff alleged a "pattern" of racketeering based on the fact that he was fired by the defendant on June 30, 1987, in retaliation for his testimony before a House Subcommittee, and the fact that the defendant allegedly "blacklisted" him which resulted in his being terminated by another employer. Unlike the case before this court, there was but a single victim in *Sever*, and the actions of the defendant could fairly be characterized "as a single episode with a single purpose which happened to involve more than one act taken to achieve that purpose." *Id.* In contrast, the government here has alleged facts that Ferrante was involved in a wide range of predicate acts over an extended period of time, with more than one victim, and more than one goal.

The cases cited by defendant in his reply memorandum add little to the debate. In *Passini v. Falke–Gruppe*, 745 F.Supp. 991 (S.D.N.Y.1990), for example, the court held

---

11. The court also held that the predicate act of the fraudulent conveyance was "too *un* related"

to be considered part of a "pattern" of racketeering. *Id.* at 724 (emphasis in original).

that plaintiff failed to plead a "pattern of racketeering activity" because there was a small number and little variety of predicate acts, the length of time in which the acts were committed was short, there was a single victim, and there were no distinct injuries. "The complaint recites a single alleged scheme involving a single perpetrator consisting of affiliated companies, a single victim and a single transaction gone sour." *Id.* at 993. In this case, however, plaintiff has produced facts upon which a reasonable jury could conclude the very opposite; that is, that Ferrante participated in a large number and variety of predicate acts (bribery, unlawful taking of town property, extortion); that the length of time was substantial (January 1982 to December 1988); that there were multiple victims (Apple Carting, Town of Islip and Town of Oyster Bay); and that there were distinct injuries.

In the recent Second Circuit case of *Azrielli v. Cohen Law Offices,* 21 F.3d 512 (2d Cir.1994), the court reversed the granting of summary judgment against certain defendants on a civil RICO complaint. The district court had concluded that there were no triable issues of fact regarding the extent to which defendants' activities constituted a "pattern" of racketeering activity. The Second Circuit disagreed: The plaintiffs had brought forward evidence that the defendants sold stock to one group of plaintiffs in 1985; that they sold stock to a different group of plaintiffs in 1986; and that each sale involved the same alleged misrepresentations. The court noted that continuity can be proved in one of several ways: (i) by proving a series of related predicate acts over a substantial, closed period of time; or (ii) by demonstrating a threat of continuity as where, for example, the predicates are the regular way of conducting the defendant's business. *Id.* at 520. The court held that the repeated sales of shares would "suffice to permit a jury to find a RICO pattern." *Id.* The same is true in this case: The predicate acts of alleged extortion, unlawful takings and bribery were executed over a substantial, closed period of time, and hence there is evidence upon which a reasonable jury could conclude that Ferrante participated in a "pattern" of racketeering activity.

In sum, defendant has failed to come forward with anything other than his own conclusory statement that the government can prove no set of facts amounting to a "pattern of racketeering." On the other hand, the government has presented facts upon which a reasonable jury could conclude that Ferrante participated in a "series of related predicates extending over a substantial period of time." Summary judgment in Ferrante's favor, therefore, would be inappropriate.

### CONCLUSION

For the foregoing reasons, defendant's motion for partial summary judgment is denied, except for those allegations regarding the predicate acts of bribery in the Town of Islip allegations. Plaintiff's request for a continuance to conduct further discovery is therefore moot.

SO ORDERED.